# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00852-CR

## Ex parte David Michael Flint

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D1-DC-090-205372, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

David Flint was arrested and charged for the crime of aggravated assault with a deadly weapon. *See* Tex. Penal Code § 22.02. Shortly thereafter, Flint's attorney filed a motion to have Flint examined by a psychiatrist because the attorney questioned whether Flint was competent to stand trial, and the district court issued an order directing a psychiatrist to examine Flint. After reviewing the psychiatrist's report, the district court determined that Flint was not competent "to stand trial at this time" and ordered Flint to be committed to a state hospital for a period not to exceed 120 days. *See* Tex. Code Crim. Proc. art. 46B.073(b) (empowering trial court to commit individual charged with crime to hospital for purpose of restoring his competency).

During Flint's commitment, two doctors prepared reports regarding Flint's competency. *See id.* art. 46B.079 (requiring head of facility to prepare report informing trial court if defendant has attained competency or if defendant is not likely to attain competency in "foreseeable future"). First, Dr. Christopher Hasseltine explained that after examining Flint, he concluded that Flint is likely to cause harm to others and is suffering "severe and abnormal mental, emotional or physical distress." Further, Dr. Hasseltine recommended that Flint be recommitted and opined that his chronic disorder will respond slowly to treatment. The report also described Flint

as aggressive and abusive and not competent to stand trial and mentioned that Flint was unlikely to achieve trial competency "in the near future." In addition to the report by Dr. Hasseltine, Dr. Sandy Le also prepared a report based on her assessment of Flint. In her report, Dr. Le agreed that Flint is likely to cause serious harm to others and is suffering from "severe and abnormal mental, emotional or physical distress." Dr. Le also recommended that Flint be recommitted and explained that his chronic disorder will only slowly respond to treatment.

After reviewing the reports and recommendations of the treating doctors, the district court issued a judgment finding that Flint "remains incompetent to stand trial," that "there is no substantial probability that [Flint] will attain the competency to stand trial within the foreseeable future," and that there is evidence that Flint "is mentally ill and requires commitment to a mental health facility." *See* Tex. Code Crim. Proc. art. 46B.084(a) (requiring court to make determination regarding defendant's competency after evaluative commitment was completed). Further, the district court scheduled a hearing before a jury to determine whether Flint was mentally ill and whether he required treatment in a mental hospital. *See id.* arts. 46B.084(e), .102(a) (specifying that if court determines defendant is incompetent but does not dismiss charges, court should schedule hearing to determine if "defendant should be court-ordered to mental health services). In addition, the district court ordered that Flint be confined pending the hearing.

A few days after the district court scheduled the hearing, Flint filed a writ of habeas corpus challenging his confinement, and the hearing to consider whether Flint was mentally ill and required treatment in a mental hospital was cancelled pending resolution of the habeas corpus proceeding. In his petition for writ of habeas corpus, Flint sought to have the commitment proceedings against him vacated and requested that he be released from confinement. After reviewing the petition for writ of habeas corpus and convening a hearing regarding the petition,

2

the presiding magistrate issued various findings of fact and conclusions of law and denied Flint's requested relief. The district court adopted the magistrate's proposed findings and conclusions and denied Flint's request for habeas relief. Flint challenges the district court's ruling.

Generally speaking, a trial court's ruling on a habeas petition will only be overturned if the trial court clearly abused its discretion. *Ex parte Wolf*, 296 S.W.3d 160, 166 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). Accordingly, appellate courts review the "evidence in the light most favorable to trial court's ruling" and will reverse the ruling only if the trial court acted without reference to any guiding rules or principles or acted arbitrarily or unreasonably. *Id.* Although appellate courts afford almost total deference to findings made by the trial court that are based on credibility and demeanor, *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006), the trial court's legal conclusions are reviewed de novo, *see Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999). In this case, the essential facts are not contested, and the challenges presented are to the constitutionality of the governing statutory framework. Accordingly, we review de novo the district court's determinations regarding the constitutionality of the statutes at issue.

In one group of arguments on appeal,[1] Flint contends that his continued confinement under the statutory scheme governing individuals who have been deemed incompetent to stand trial but whose charges have not been dismissed does not comply with due process. In particular, he urges that a determination that he was not competent to stand trial and that it is unlikely that he will attain competency in the foreseeable future necessarily means that a trial will never occur, and therefore, he insists that his continued confinement cannot serve the constitutionally permissible

---

[1] In the table of contents of his brief, Flint lists 26 issues on appeal, but the brief primarily focuses on two groups of assertions that he repeats throughout the brief. In this opinion, we have limited our discussion to those groups of assertions.

3

purpose of ensuring his presence at trial. Similarly, he argues that once a determination was made that he was not competent to stand trial, his charges should have been dismissed.

As support for these propositions, Flint points to *Jackson v. Indiana*, 406 U.S. 715 (1972). Jackson had the intelligence of a "pre-school child" and could not "read, write, or otherwise communicate except through limited sign language." *Id.* at 717. After a trial court ordered a competency determination, two psychiatrists examined Jackson and determined that it was unlikely that he would ever develop the skills necessary to minimally communicate with anyone. *Id.* at 718-19. In light of this testimony, the trial court ordered Jackson confined until the governing agency deemed him sane. *Id.* at 719. Ultimately, the Supreme Court determined that the trial court could not "constitutionally commit [Jackson] for an indefinite period simply on account of his incompetency to stand trial." *Id.* at 720.

In *Jackson*, there was nothing in the record that demonstrated the possibility that Jackson's condition might improve in the future. *Id.* at 725-26. In fact, all of the evidence showed that Jackson would never improve. *Id.* When discussing the evidence, the Supreme Court said that if there was evidence that Jackson's condition would improve, its decision might be different. *Id.* at 725. Moreover, although the Court did not set out any time limits for confinement, the Court noted that Jackson had been confined for three and a half years. *Id.* at 738-39. In light of that, the Court held that "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than a reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.* at 738.

We believe Flint's reliance on *Jackson* is misplaced. As a preliminary matter, we note that the Court in *Jackson* was concerned that Jackson had been continuously confined simply

4

because of his incompetency to stand trial, but the Court has also expressed its intention that a defendant may be confined without violating the holding in *Jackson* if there is evidence that the accused had committed criminal acts or was otherwise dangerous. *Cf. Jones v. United States*, 463 U.S. 354, 364 n.12 (1983). In this case, the evidence presented to the district court demonstrated Flint's currently aggressive demeanor and explained that Flint posed a serious risk of harm to others.

In any event, in the *Jackson* case, the Court did not hold that an individual who is deemed incompetent to stand trial is entitled to release immediately after that determination is made; on the contrary, the Court expressly refused to make a determination regarding the time frame under which someone should be released or scheduled for a civil commitment hearing and simply held that an individual cannot be held for more than a reasonable amount of time necessary to determine if he will attain capacity in the future. *Jackson*, 406 U.S. at 738. Unlike Jackson, who had been held for over three years, Flint was only confined for a few days after the district court made its initial competency determination before Flint filed his habeas petition. Also, in this case, the district court had scheduled a jury hearing to determine whether Flint was mentally ill and whether he should be committed, and the hearing was only delayed because Flint filed his writ. Moreover, unlike the copious evidence in *Jackson* demonstrating that Jackson would never be able to effectively communicate or attain competency, the medical evidence in this case showed that although Flint had not yet attained competency, his condition was slowly responding to treatment. *See United States v. Magassouba*, 544 F.3d 387, 417 (2d Cir. 2008) (differentiating *Jackson* because evidence that defendant will regain competency with additional treatment).

For all of these reasons, we do not believe that Flint's continued confinement in this case has run afoul of any due process considerations identified in *Jackson* and accordingly overrule this group of issues.

5

In a second set of arguments, Flint contends that the governing statutory framework improperly distinguishes between individuals who have been deemed incompetent and had their charges dismissed from those whose charges have not been dismissed. In light of the different treatment, Flint insists that the governing framework violates the Equal Protection Clause and the Due Process Clause. In particular, Flint notes that individuals whose criminal charges are dismissed are afforded benefits and substantial procedural protections unavailable to those whose charges are not dismissed, including the possibility of being released prior to a scheduled commitment hearing. In addition, Flint urges that because he was found to be permanently incompetent, he should have been released from confinement and treated no differently than someone being civilly committed. Finally, Flint insists that the correct standard for reviewing the propriety of the differential treatment is strict scrutiny.

Before addressing Flint's issues, a brief overview of the relevant governing law that Flint is challenging is helpful to frame the arguments on appeal. As highlighted by Flint, the code of criminal procedure distinguishes between criminal defendants who are found to be incompetent to stand trial and whose charges are dismissed from those whose charges are not dismissed. *See* Tex. Code Crim. Proc. art. 46B.084(e), (f). For defendants whose charges have been dismissed, the code requires the criminal court to determine if there is evidence supporting a determination that the defendant is mentally ill and, if so, to transfer "the defendant to the appropriate court for civil commitment proceedings" under the provisions of the mental health code located in the health and safety code. *Id.* arts. 46B.084(f), .151(b). When transferring the defendant for civil commitment proceedings, the transferring court may place the defendant in jail or a similar placement or release the defendant into the care of a responsible person. *Id.* art. 46B.151(b). If the trial court elects to place the individual in a facility pending the hearing, the defendant may only be

6

detained at the facility if the head of the facility agrees and if an order of protective custody is issued. *Id.* art. 46B.151(c). If the court elects not to detain the defendant pending the hearing, it must release the defendant. *Id.* art. 46B.151(d). After conducting a hearing, if the trial court determines that the individual is mentally ill, the court may issue an order committing the person to a mental health facility for treatment or to outpatient care. Tex. Health & Safety Code § 574.036(e). In addition, the facility administrator to which the individual has been committed must release the individual when the commitment order expires and may release the individual before the expiration of the order if he determines that the patient "no longer meets the criteria for court-ordered mental health services." *Id.* §§ 574.085, .086(a). If the facility administrator releases the individual early, his decision terminates the commitment order. *Id.* § 574.086(c).

For defendants whose charges have not been dismissed, the code requires the criminal court to hold a hearing regarding "whether the defendant should be court-ordered to mental health services." Tex. Code Crim. Proc. arts. 46B.084(e), .102(a). The code also provides that individuals, like Flint, who have been charged with violent offenses must be placed in a maximum security unit pending the hearing. *Id.* art. 46B.104; *see id.* art. 17.032(a) (listing qualifying violent offenses). *But see id.* art. 46B.106 (requiring defendant charged with non-violent offense who has charge pending to be committed to facility or outpatient treatment program). However, the code also requires that a defendant be evaluated for potential dangerousness shortly after his commitment in the maximum security facility and be transferred to a less secure facility if it is determined by a review board that the defendant is not "manifestly dangerous." *Id.* art. 46B.105.

Regarding the mental-illness hearing, the governing statutes specify that the proceedings will be conducted under the portions of the mental health code unless the mental health code provisions conflict with the code of criminal procedure. *Id.* art. 46B.102(b). Consistent with

7

that proposition, the mental health code provisions governing civil commitment proceedings state that the provisions "relating to the discharge, furlough, or transfer of a patient do not apply to a person charged with a criminal offense who is admitted to a mental health facility under" the provisions of the code of criminal procedure listed above. Tex. Health & Safety Code § 571.011(b). In addition, the code of criminal procedure specifies that if the defendant is deemed incompetent after the hearing, the trial court will make the ultimate decision regarding whether the defendant qualifies for release from commitment after receiving a recommendation from the head of the treating facility and that a trial court may at any time inquire into whether the defendant has regained competency. *Id.* arts. 46B.107, .108(a).

Regarding the type of review that is warranted here, we have been unable to locate any case applying strict scrutiny to the types of statutes at issue in this case; on the contrary, cases addressing commitment statutes have seemingly employed the rational-basis standard of review, *see Foucha v. Louisiana*, 504 U.S. 71, 79 (1992) (explaining that nature of commitment must "bear some reasonable relation to the purpose for which the individual is committed"); *cf. United States v. Salerno*, 481 U.S. 739, 748-49 (1987) (relating that government's interest in community safety can outweigh liberty interest and that government may detain mentally unstable individuals who present danger to others and dangerous defendants who become incompetent for trial), which only requires that the challenged classification be rationally related to a legitimate governmental purpose, *Cannady v. State*, 11 S.W.3d 205, 215 (Tex. Crim. App. 2000). Accordingly, we agree with the district court's determination that the standard of review in this case is rational basis. *See Schweiker v. Wilson*, 450 U.S. 221, 230 (1981) (explaining that unless statute employs "inherently invidious" classification or impinges fundamental rights, courts have limited power to review acts of legislature); *see also Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)

8

(stating general rule that legislation is presumed valid if classification is rationally related to legitimate interest).

Although commitment proceedings for individuals who have not had their charges dismissed are governed by the provisions of the mental health code that also govern civil commitments, *see* Tex. Code Crim. Proc. art. 46B.102 (explaining that health and safety code provisions apply except to extent they conflict with provisions of code of criminal procedure), Flint correctly points out that individuals with criminal charges pending are treated differently. For example, Flint notes that individuals facing a civil involuntary commitment after their charges have been dismissed may only be detained under a protective custody order issued after a physician has determined that the individual is mentally ill and if it is determined that the individual presents a threat to himself or others, Tex. Health & Safety Code § 574.022(a), whereas those individuals who are determined to be incompetent and who have charges pending against them are subject to continued detention pending their commitment proceedings. In addition, Flint highlights that the ultimate competency determination for individuals with charges pending is made by a criminal trial court but that the determination for individuals whose charges have been dismissed is made by medical professionals.

While Flint highlights the differential treatment, he also points out the reason for it: Flint is currently the subject of a pending indictment for a violent offense. In other words, a grand jury has determined that there is probable cause to believe that he has committed a violent offense, and the State has evidenced its intention to prosecute Flint after a competency determination rather than dismiss the charges. As the district court explained, the criminal and the civil commitment tracks serve the purpose of confining "a dangerous mentally ill person for the protection of the public or the person," but the criminal track has the added purpose of "providing persons with

9

treatment for the specific purpose of obtaining competency to stand trial." *Cf. Baxstrom v. Herold*, 383 U.S. 107, 111 (1966) (explaining that distinctions may be made provided that distinction has relevance to purpose for which classification was made and that classification of mentally ill as insane or dangerously insane may be reasonable distinction for purpose of determining custodial arrangements). Moreover, the district court explained that "[t]he State has a substantial interest in prosecuting crime, and enforcing efforts to make defendants obtain competency." *See Sell v. United States*, 539 U.S. 166, 180 (2003) (noting important governmental interest "in bringing to trial an individual accused of a serious crime"). For that reason, the district court concluded that "using the grand jury determination of probable cause that the person committed certain violent offenses . . . serves as an initial screening to protect the public." In addition, the district court concluded that placing the ultimate decision on whether the "criteria for release" under the health and safety code have been met in the hands of the criminal court for cases in which the charges against an individual have not been dismissed "ensures the decision will be made based upon the law, insulated from the pressures of bed space and other administrative considerations that might subtly influence the decision making of the head of a facility." In light of the preceding, the district court explained that although Flint may believe that there are better ways to effect the relevant State's interests, the differential treatment provided by the governing statutory framework is rationally related to a legitimate governmental interest, and we agree with the reasoning of the district court. Accordingly, we overrule Flint's second set of arguments on appeal.[2]

---

[2] Although we need not exhaustively discuss them in this case, we note that the statutes governing the competency and confinement of individuals whose charges have not been dismissed do provide due process protections, including the requirement that an individual committed to a maximum security facility prior to a mental-illness hearing be subjected to a dangerousness evaluation shortly after being committed to assess whether the placement is appropriate, Tex. Code Crim. Proc. art. 46B.105(b), a limit on the maximum period of confinement, *id.* art. 46B.0095(a) (mandating that person may not be committed for period of time that exceeds maximum permissible

Having overruled both sets of issues on appeal, we affirm the district court's judgment denying Flint's requested habeas-corpus relief.[3]

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:   July 25, 2013

Do Not Publish

_____

punishment for offense charged), and the protections of the mental health code provisions that do not conflict with the code of criminal procedure, *id.* art. 46B.102(a), (b).

[3] In its adopted findings and conclusions, the district court determined that claims that Flint presented regarding his yet-to-be-held commitment hearing under chapter 46B of the code of criminal procedure were premature and that "[w]hatever due process concerns there may be about indefinite confinement under the authority of [chapter 46B], those evils have not yet touched [Flint]." Further, the court explained that those claims "would only become ripe after the 46B.102 extended commitment proceedings hav[e] taken place, with a developed record." In his brief on appeal, Flint focuses on his pre-hearing detention and challenges that continued confinement. To the extent that Flint seeks to challenge treatment or placement after the commitment hearing is held, we agree with the district court that those issues are not yet ripe for consideration. *See Ex parte Cross*, 69 S.W.3d 810, 814 (Tex. App.—El Paso 2002, pet. ref'd) (explaining that ripeness doctrine serves constitutional interests of prohibiting advisory opinions by avoiding premature adjudication).