**Ex Parte Matthew Oscar WOLF, Appellee.**

No. 14–08–00078–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 4, 2009.

Discretionary Review Refused Dec. 16, 2009.

Eic Kugler, Houston, TX, for appellants.

Randy Schaffer, Houston, TX, for appellees.

Panel consists of Justices FROST, BROWN, and BOYCE.

## OPINION

KEM THOMPSON FROST, Justice.

The State of Texas appeals the trial court's order granting habeas-corpus relief in favor of appellee Matthew Oscar Wolf based on the ineffective assistance of Wolf's trial counsel. The State asserts that Wolf did not show he was confined or restrained pursuant to state action, so as to invoke the trial court's habeas-corpus jurisdiction. The State also asserts that Wolf's request for habeas relief is barred under the doctrine of laches and that the trial court erred in finding ineffective assistance of counsel. We affirm the trial court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 23, 2003, while a junior in college, appellee Matthew Oscar Wolf was arrested at a Houston department store. The next day, Wolf was charged with the theft of two shirts and one pair of pants with a value of more than $500 and less than $1,000. Wolf retained attorney Glen Devlin to represent him. One week after he was charged, under a plea bargain, Wolf pleaded "guilty", and the trial court signed an order assessing a fine of $150, deferring adjudication of guilt, and placing Wolf on community supervision for nine months, as agreed in the plea bargain. Wolf successfully completed the community supervision. On October 15, 2004, the trial court signed an order for nondisclosure.

After Wolf graduated from college, he obtained employment as a custody-fund accountant. Because the order for nondisclosure does not prevent certain agencies from learning about Wolf's arrest, this arrest was uncovered in a search conducted at the request of Wolf's employer. The employer terminated Wolf's employment based on this arrest.

Wolf filed an application for writ of habeas corpus in the trial court asserting, among other things, the following:

- Wolf seeks habeas relief under the Texas Constitution and section 11.09 of the Texas Code of Criminal Procedure.

- Wolf's plea bargain was the result of Devlin's ineffective assistance of counsel.

- Wolf told Devlin that he was guilty and that he needed to resolve the case in a manner that would enable him to clear his record so that he could work in the banking and securities industry after graduation.

- Devlin told Wolf that new legislation would enable Wolf to have his record sealed if Wolf successfully completed a deferred-adjudication community supervision. Devlin did not mention pretrial diversion or a "Class C special expense," [1] and Wolf did not know about these options.

- Relying on Devlin's assurance that Wolf's record could be sealed if he successfully completed a deferred-adjudication community supervision,

---

1. Under article 45.051 of the Texas Code of Criminal Procedure, a defendant may plead "guilty" or "nolo contendere" to a Class C misdemeanor and receive deferred-adjudication probation. *See* TEX.CODE CRIM. PROC. ANN. art. 45.051 (Vernon Supp. 2009). If a defendant successfully completes his probation, and the trial court dismisses the complaint under this statute, then records relating to this complaint may be expunged. *See id.* art. 45.051(e). For ease of reference, throughout this opinion, we refer to deferred-adjudication probation under this statute as "Class C special expense," which the record reflects is a common shorthand reference for this type of probation.

Wolf agreed to the plea bargain negotiated by Devlin. Wolf successfully completed the community supervision and obtained an order for nondisclosure.

- However, despite the order for nondisclosure, certain agencies still are able to access Wolf's arrest information. As a result, Wolf's first post-graduation employer learned of Wolf's arrest and terminated his employment. Wolf cannot work in the banking and securities industry because of the record of his arrest for theft.

- Wolf would not be suffering this collateral consequence if Devlin had sought and obtained either pretrial diversion or a Class C special expense because, in that event, Wolf would have been able to have the record of his arrest expunged.

- Devlin's failure to seek on Wolf's behalf either pretrial diversion or Class C special expense constituted ineffective assistance of counsel that prejudiced Wolf.

The trial court granted the writ and held a hearing on Wolf's request for relief. At the hearing, Devlin testified as follows:

- Because Devlin believes that he does not have a continuing fiduciary duty to Wolf, he destroyed all of the file regarding his representation of Wolf, except for one written statement by Wolf. Devlin does not recall exactly when he destroyed these documents, but it was sometime in 2004 or 2005.

- Though Devlin is sure he met with Wolf to discuss Wolf's case, he does not remember what was said at that meeting.

- Devlin believes that he negotiated the plea bargain for Wolf on December 31, 2003, the day on which Wolf pleaded "guilty".

- Devlin did not apply to the district attorney for pretrial diversion for Wolf because Devlin did not think that Wolf would get pretrial diversion. Devlin did not even advise Wolf that he could apply for pretrial diversion.

- Devlin is sure that he asked the prosecutor in this case for a Class C special expense because he does so in every case. However, Devlin did not present the prosecutor with any information in support of such a request.

- In his practice of law, to the best of his recollection, Devlin has applied for pretrial diversion for "less than a dozen" clients, and it was granted one time.

Wolf testified at the hearing as follows:

- On December 23, 2003, Wolf was arrested for stealing clothes from a Houston department store. Wolf was not employed by the department store in question.

- After Wolf was charged, he found Devlin by using the "Yellow Pages." Wolf and his father met with Devlin. At the time Wolf was a junior in college, majoring in economics. Wolf told Devlin that he had committed the theft.

- Wolf also told Devlin that Wolf wanted to have a clear record so that he could be employed in the financial services industry. Wolf's father also discussed this issue with Devlin.

- Devlin presented Wolf with two options: (1) plead "guilty" and accept deferred adjudication or (2) plead "not guilty" and go to trial. Devlin told Wolf that, if he successfully completed deferred adjudication, Wolf could later have his record sealed, which Wolf understood to mean that the record would be sealed from the public.

- Devlin did not mention that the governmental body that would license

Wolf in the financial industry could have access to Wolf's record even after the record was "sealed."

- Devlin did not mention pretrial diversion or Class C special expense.
- Wolf next saw Devlin in the courtroom on December 31, 2003. Wolf accepted the State's plea bargain offer. Wolf would not have accepted this plea bargain offer if Devlin had told him that Wolf's record would not be sealed from the financial industry.
- Wolf completed his deferred adjudication probation and obtained an order of nondisclosure, which he believed would keep the financial industry from learning about his arrest record.
- Wolf graduated with a degree in economics in June 2005. Wolf obtained full-time employment; however, on November 2, 2005, his employer terminated his employment based on its discovery of his arrest record following a records search. Since this termination, Wolf has been unable to work in the securities industry. Wolf will not ever be able to work in that industry as long as his arrest record exists.
- Wolf has since learned that, had he received a pretrial diversion or a Class C special expense, his arrest record could have been expunged. If Devlin had advised Wolf about a pretrial diversion and a Class C special expense, Wolf would have asked Devlin to pursue both of these options and would have provided Devlin with Wolf's high school and college transcripts, character letters, or anything else Devlin requested.

At the hearing, the trial court admitted into evidence the affidavits of nine criminal defense lawyers who testified to their success at obtaining either pretrial diversion or Class C special expense for clients such as (1) two high school students with pro-fessional aspirations who, in separate incidents, stole clothes from department stores and were charged with misdemeanor theft, (2) a college student with no criminal record charged with misdemeanor theft for stealing clothes from a department store, (3) a man in his twenties who had never been in trouble before and who was charged with a state jail felony for receiving a stolen computer, (4) a nursing student charged with credit card abuse, (5) a 28–year–old woman, who was bipolar and easy to manipulate, alleged to have stolen $100 worth of beer from a grocery store, (6) a young man with mental disabilities who was involved in the misdemeanor theft of merchandise from a store, (7) a 23–year–old oil and gas consultant with no criminal record charged with misdemeanor theft, (8) a stockbroker in his late twenties charged with possession of less than one gram of cocaine, and (9) a college student with no criminal record, charged with a state jail felony, who stole more than $1,500 in cash from the clothing store in which he worked.

Seven of these criminal defense lawyers testified to their professional beliefs that a reasonably competent lawyer in Harris County would try to obtain pretrial diversion or a Class C special expense for a first offender charged with misdemeanor theft. One of the lawyers testified that a reasonably competent lawyer would try to obtain pretrial diversion or a Class C special expense for a young adult with professional aspirations and that, in his experience, there is a reasonable probability that such a case would be resolved in a manner that would enable the client to have his record expunged. Another lawyer testified that a reasonably competent lawyer representing Wolf would have requested pretrial diversion or a Class C special expense and that, based on his experience, there is a reasonable probability that Wolf's case would

have been resolved in a manner that would have made Wolf eligible for an expunction of his criminal record.

The trial court granted relief and issued the following findings of fact and conclusions of law:

- Wolf cannot work in the banking and securities industry because of his arrest for theft.
- Wolf told Devlin that Wolf needed to resolve the case in a manner that would enable him to clear his record so that Wolf could work in the banking and securities industry following graduation.
- Devlin advised Wolf that recent legislation would enable Wolf to have his record sealed if he successfully completed a deferred adjudication probation. Devlin did not explain that the Securities and Exchange Commission ("SEC") and similar agencies still could discover the arrest.
- Devlin did not advise Wolf that he could apply for pretrial diversion or request a Class C special expense, either of which would have enabled Wolf to have his record expunged if successfully completed.
- Wolf accepted the plea bargain in reliance on Devlin's advice that his record could be sealed if he successfully completed a deferred adjudication probation.
- Wolf would not have accepted the plea bargain had Devlin advised him that, if he received pretrial diversion or a Class C special expense, the record of his arrest could be expunged, but if he were placed on deferred adjudication probation, the SEC and similar agencies could discover his arrest. Instead, he would have instructed Devlin to seek a resolution that would enable him to have the record of his arrest expunged.

- Devlin did not submit an application to the district attorney's office for pretrial diversion, nor did he request a Class C special expense on Wolf's behalf.
- Competent criminal defense lawyers in Harris County have obtained pretrial diversion or a Class C special expense for high school, college, and graduate students charged with misdemeanor theft who have professional aspirations.
- Devlin's performance was deficient in failing to apply for pretrial diversion, request a Class C special expense, or advise Wolf of these options.
- Devlin was deficient in failing to advise Wolf that, if Wolf successfully completed a deferred adjudication probation, the SEC and similar agencies could discover his arrest for theft even if his record were sealed.
- Wolf's "guilty" plea was involuntary as a result of ineffective assistance of counsel.

## II. ISSUES PRESENTED

On appeal, the State asserts the following issues:

(1) The doctrine of laches prevents Wolf from obtaining relief because his defense attorney destroyed his file and forgot important details of this case while Wolf delayed filing an application for writ of habeas corpus.

(2) Wolf is not confined or restrained pursuant to state action, and therefore the trial court lacked jurisdiction to issue the writ.

(3) Wolf's trial counsel was not deficient in securing his client a plea agreement for deferred adjudication.

(4) Wolf was not directly harmed by any deficient performance of his trial counsel.

### III. STANDARD OF REVIEW

The applicant for a writ of habeas corpus has the burden of proving his allegations by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex.Crim.App.2006). In reviewing the trial court's ruling on a habeas-corpus application, we must review the record evidence in the light most favorable to the trial court's ruling, and we must uphold that ruling absent an abuse of discretion. *Id.* We decide whether a trial court abused its discretion by determining whether the court acted without reference to any guiding rules or principles, or in other words, whether the court acted arbitrarily or unreasonably. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex.Crim.App.1993). A trial court abuses its discretion when its decision lies outside of the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g).

### IV. ANALYSIS

**A. Did the trial court lack jurisdiction because the applicant for habeas relief is not confined or restrained pursuant to state action?**

Addressing the State's jurisdictional challenge first, we begin by considering the State's assertion, in its second issue, that the trial court lacked jurisdiction because Wolf is not confined or restrained pursuant to state action.[2] To be entitled to habeas relief under article 11.09, an applicant must be "confined on a charge of misdemeanor." TEX.CODE CRIM. PROC. ANN. art. 11.09 (Vernon 2005). For a county court at law to have habeas jurisdiction under the Texas Constitution, an appli-

cant's liberty must be restrained. *See Ex parte Schmidt*, 109 S.W.3d 480, 483 (Tex. Crim.App.2003); *Ex parte Renier*, 734 S.W.2d 349, 353 (Tex.Crim.App.1987); *see also* TEX.CODE CRIM. PROC. ANN. art. 11.01 (Vernon 2005).

In examining whether an applicant for habeas relief successfully invoked the trial court's habeas-corpus jurisdiction, some courts have found a lack of habeas-corpus jurisdiction because the applicant's petition did not show that the applicant was confined or restrained pursuant to any state action. *See Ex Parte Paprskar*, 573 S.W.2d 525, 527 (Tex.Crim.App.1978), *overruled on other grounds, Weiner v. Dial*, 653 S.W.2d 786, 787, n. 1 (Tex.Crim. App.1983); *Dahesh v. State*, 51 S.W.3d 300, 303 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Under its second issue, the State concedes that habeas-corpus jurisdiction may be based on collateral consequences; however, the State focuses on the state-action requirement and argues that the collateral consequences in this case result from the action of private employers, such as Wolf's first post-graduation employer, who will not employ individuals with arrests for theft on their record. Nonetheless, Wolf's petition and the evidence at the hearing both showed that the collateral consequences of which Wolf complains result from state agencies making available to other government agencies Wolf's criminal history record information relating to the theft offense that gave rise to the deferred adjudication in this case. *See* Act of May 31, 2003, 78th Leg., R.S., ch. 1236, § 4, 2003 Tex. Gen. Laws 3499, 3500 (former version of TEX. GOV.CODE ANN. § 411.081); Act of May 21, 2001, 77th

**2.** Wolf asserts that the State failed to preserve error as to its second issue; however, because in this issue, the State attacks the trial court's jurisdiction as well as this court's appellate jurisdiction, preservation of error was not

necessary. *See McGowan v. State*, 938 S.W.2d 732, 741 (Tex.App.-Houston [14th Dist.] 1996), *aff'd, Weightman v. State*, 975 S.W.2d 621 (Tex.Crim.App.1998).

Leg., R.S., ch. 474, § 4, 2001 Tex. Gen. Laws 916, 918 (former version of Tex. Gov. Code Ann. § 411.083). Therefore, we conclude that Wolf's inability to obtain employment in the banking and securities industry constitutes collateral consequences pursuant to state action.[3] Accordingly, we overrule the State's second issue.

## B. Is habeas-corpus relief barred by laches?

In its first issue, the State asserts that the trial court erred by not ruling that the requested habeas relief was barred by laches. As an initial matter, we note that the State did not raise laches in any written filing with the trial court, and it did not mention laches at the hearing until closing argument. Wolf asserts that, because the State did not plead laches and because the State did not put Wolf on notice that it was asserting laches until after the close of evidence at the hearing, the State did not preserve error. We presume for the sake of argument that the State may argue on appeal that, based on the evidence presented, the trial court abused its discretion by not ruling that the doctrine of laches bars the relief requested by Wolf.

■ At the hearing, the State had the burden to (1) make a particularized showing of prejudice to its ability to respond to the allegations in Wolf's application, (2) show that the prejudice was caused by Wolf having filed a late petition, and (3) show that Wolf has not acted with reasonable diligence as a matter of law. *See Ex parte Carrio,* 992 S.W.2d 486, 488 (Tex. Crim.App.1999). Proof of delay alone is not sufficient. *See id.* In determining

whether the requested relief is barred by laches, the trial court has discretion to assess the equities of the particular situation. *See id.*

■ As to diligence, the record reflects that the trial court signed the challenged order on December 31, 2003, and that Wolf was fired from his first job after graduation on November 2, 2005. Wolf filed an application for habeas-corpus relief on December 13, 2007. The State did not present evidence relating to Wolf's diligence in seeking habeas-corpus relief. Wolf stated on direct examination that he was surprised that his employer had been able to learn about his arrest record. Wolf further testified that, some time after October 25, 2005, he discovered that the order of nondisclosure did not prevent the SEC from learning of his arrest record and that he learned about the availability of pretrial diversion and Class C special expense. Nonetheless, the record is silent as to when after October 25, 2005, Wolf made this discovery.

On appeal, the State asserts that Wolf did not act with reasonable diligence as a matter of law because he did not file this application until more than two years after the termination of his employment and because the statute of limitations for legal malpractice cases is two years. However, the State has cited no case, and we have found none, that bases the laches determination in a habeas-corpus proceeding on the statute of limitations for a client's negligence claim against his attorney. Even if this court were to look to this statute of limitations, we note that it is governed by

**3.** The other cases cited by the State do not address state action and do not indicate that there is no habeas-corpus jurisdiction on the facts before us. *See State v. Collazo,* 264 S.W.3d 121, 126–27 (Tex.App.-Houston [1st Dist.] 2008, pet. ref'd) (concluding there was habeas-corpus jurisdiction based on appli-

cant's inability to obtain Texas peace officer license); *Ex Parte Davis,* 748 S.W.2d 555, 557–58 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd) (concluding there was habeas-corpus jurisdiction based on applicant's inability to enter military service).

the "discovery rule," under which limitations does not begin to run until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of his claim. *See Willis v. Maverick*, 760 S.W.2d 642, 645–46 (Tex.1988). Therefore, even under the State's argument, there would be no proof as a matter of law that Wolf failed to act with reasonable diligence, if he discovered or reasonably should have discovered Devlin's ineffective assistance after December 13, 2005. However, the evidence does not prove when Wolf made this discovery, and there is no evidence as to when he should have discovered this ineffective assistance through the exercise of reasonable care and diligence. The State did not prove that Wolf failed to act with reasonable diligence as a matter of law.

 Even if the State had proved a failure by Wolf to act with reasonable diligence as a matter of law, the State did not make a particularized showing of prejudice to its ability to respond to the allegations in Wolf's application. *See Ex parte Carrio*, 992 S.W.2d at 488. On appeal, the State points out that Devlin destroyed his entire file regarding his representation of Wolf, except for one document. However, Devlin testified that he destroyed these documents sometime in 2004 or 2005, approximately two to three years before Wolf sought relief in this case. The State also points to Devlin's testimony that he does not remember what Wolf told him or what advice Devlin gave Wolf. Devlin stated that his recollection of events would have been better had it been in "closer proximity" to his representation of Wolf in December 2003. First, reviewing the record evidence in the light most favorable to the trial court's ruling, we note that the trial court was free to conclude that Devlin lacked credibility and to disbelieve this testimony from Devlin. *See Kniatt*, 206 S.W.3d at 664. In addition, the record contains no evidence of a causal connection between Devlin's alleged memory failures and Wolf's alleged failure to act with reasonable diligence as a matter of law. The State did not make a particularized showing of prejudice to its ability to respond to the allegations in Wolf's application, and it did not show that the prejudice was caused by Wolf having filed a late petition. Under the applicable standard of review, we conclude that the trial court did not abuse its discretion in declining to rule that Wolf's requested relief was barred by the doctrine of laches. Accordingly, we overrule the State's first issue.

### C. Did the trial court abuse its discretion in finding ineffective assistance of counsel?

 The trial court found ineffective assistance of counsel. In reviewing claims of ineffective assistance of counsel, we apply a two-prong test. *See Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex.Crim.App. 2000). To establish ineffective assistance of counsel, Wolf had to prove by a preponderance of the evidence in the court below that (1) Devlin's representation fell below an objective standard of reasonableness; and (2) Devlin's deficient performance resulted in prejudice to the defense. *See id.* When evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of each case. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). The reviewing court indulges a strong presumption that (1) counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy, and (2) that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.* To overcome the presumption of reasonable professional assistance, any allegation

of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the ineffectiveness. *See id.* at 814.

**1. Did the trial court err by concluding that the securing of a plea bargain for deferred adjudication constituted ineffective assistance of counsel?**

▇▇ In its third issue, the State asserts that Wolf did not prove the first prong of the test for ineffective assistance of counsel. The State asserts that Devlin's securing of a plea bargain for deferred adjudication was not ineffective. The State's main argument is that Devlin had no duty to warn Wolf that banking or securities entities might have access to his arrest record because attorneys allegedly have no duty to warn their clients about every possible collateral consequence of a "guilty" plea. However, the cases cited by the State are not on point because they involve the sufficiency of the trial court's admonishment of a defendant when he pleads "guilty" rather than allegations of ineffective assistance of counsel. *See State v. Jimenez,* 987 S.W.2d 886, 888–89 (Tex. Crim.App.1999); *State v. Collazo,* 264 S.W.3d at 127–28; *Tovar–Torres v. State,* 860 S.W.2d 176, 178 (Tex.App.-Dallas 1993, no pet.). This case does not merely involve a defendant who told his counsel that he was guilty and indicated that he wanted to negotiate a plea bargain agreement. An important circumstance in this case is Wolf's specific instruction to Devlin that Wolf needed to resolve the case in a manner that would enable Wolf to clear his record so he could work in the banking and securities industry after graduation. Therefore, a finding that Devlin was ineffective need not be based on the proposition that every defense attorney must warn a plea-bargaining client either (1) that the client's arrest record will be available to government agencies even after an order for nondisclosure or (2) that the client has the option to apply for pretrial diversion or a Class C special expense. Under the particular circumstances of the case at hand, the testimony of the nine attorneys supports the trial court's finding that Devlin's representation of Wolf fell below an objective standard of reasonableness because Devlin failed to apply for pretrial diversion, request a Class C special expense, or advise Wolf of these options, even though Wolf told him that Wolf needed to resolve the case in a way that would enable Wolf to clear his record so that he could work in the banking and securities industry.

The State cites testimony from Devlin that he did not apply on behalf of Wolf for pretrial diversion because Devlin did not think Wolf would receive pretrial diversion. The State claims that this is evidence of Devlin's trial strategy and asserts there is no credible evidence to condemn this trial strategy. However, the record contains considerable evidence to indict this alleged strategy. Wolf testified that he told Devlin that Wolf needed to resolve the case in a manner that would enable him to clear his record so that he could pursue a career in the banking and securities industry after graduation. The record contains evidence that sometimes after considering a packet in support of a request for pretrial diversion, the district attorney's office will deny the request for pretrial diversion and instead agree to allow a Class C special expense. Instead of advising Wolf regarding the two possible means of achieving Wolf's stated goals and instead of pursuing these two means, Devlin advised Wolf to pursue and then pursued a plea bargain that would not achieve Wolf's goals. Devlin's testimony that he did not apply for pretrial diversion because Devlin did not think he would succeed does not conclusively prove that Devlin acted

reasonably and pursuant to a sound strategy. The above evidence rebutted the strong presumption that Devlin's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Ex parte Lemke,* 13 S.W.3d at 795.

The record contains sufficient evidence to support the trial court's finding that Devlin's legal representation of Wolf fell below an objective standard of reasonableness. Under the applicable standard of review, the trial court did not abuse its discretion in concluding that Wolf proved the first prong of the test for ineffective assistance of counsel. *See id.* Accordingly, we overrule the State's third issue.

**2. Did the trial court err by concluding that counsel's deficient performance resulted in prejudice?**

In its fourth issue, the State asserts that Wolf did not prove the second prong of the test for ineffective assistance of counsel. In a very brief argument under this issue the State first asserts that Wolf failed to prove that, but for Devlin's deficient performance, Wolf would not have pleaded "guilty" and instead would have insisted on going to trial. The "prejudice" prong of the test for ineffective assistance of counsel sometimes has been stated in this manner on occasions when counsel's deficient performance allegedly deprived the defendant of his right to a trial. *See Johnson v. State,* 169 S.W.3d 223, 232 (Tex.Crim.App.2005); *Ex parte Moody,* 991 S.W.2d 856, 858 (Tex.Crim. App.1999). However, in some instances, the Court of Criminal Appeals has granted habeas relief based on ineffective assistance of counsel in a "guilty" plea case without requiring proof that the applicant would have insisted on going to trial. *See Ex parte Lemke,* 13 S.W.3d at 795–98. When the applicant alleges prejudice based on the loss of an opportunity to

plead "guilty" on a different basis than he did, it makes sense not to require proof that the applicant would have insisted on going to trial. *See id.* Under the circumstances of this case, Wolf was not required to prove that he would have insisted on going to trial. *See id.*

Wolf testified that he told Devlin that Wolf needed to resolve the case in a manner that would enable him to clear his record so that Wolf could work in the banking and securities industry after graduation. Wolf stated that, if Devlin had advised Wolf about a pretrial diversion and a Class C special expense, Wolf would have asked Devlin to pursue both of these options and would have provided Devlin with Wolf's high school and college transcripts, character reference letters, and anything else Devlin requested to pursue those options. One lawyer testified that a reasonably competent lawyer would try to obtain pretrial diversion or a Class C special expense for a young adult with professional aspirations and that, in his experience, there is a reasonable probability that such a case would be resolved in a manner that would enable the client to have his record expunged. Another lawyer testified that a reasonably competent lawyer representing Wolf would have requested pretrial diversion or a Class C special expense and that, based on his experience, there is a reasonable probability that Wolf's case would have been resolved in a manner that would have made Wolf eligible for an expunction of his record. The evidence supports the finding of a reasonable probability that, but for Devlin's deficient performance, the result of the proceeding would have been different. *See Johnson,* 169 S.W.3d at 230; *Ex parte Lemke,* 13 S.W.3d at 796–97. Under the applicable standard of review, we conclude the trial court did not abuse its discretion in determining that Wolf satisfied the sec-

ond prong of the test for ineffective assistance of counsel. *See Ex parte Lemke*, 13 S.W.3d at 795. Accordingly, we overrule the State's fourth issue.

## V. CONCLUSION

The trial court had jurisdiction over Wolf's application for habeas-corpus relief. The State did not prove that the relief Wolf sought was barred by the doctrine of laches as a matter of law, and the trial court did not abuse its discretion by declining to rule that Wolf's requested relief was barred by laches. Under the applicable standard of review, the trial court did not abuse its discretion in concluding that Wolf satisfied both prongs of the test for ineffective assistance of counsel. Accordingly, we affirm the trial court's order granting habeas-corpus relief.