ACCEPTED
03-15-00334-CR
7672157
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/4/2015 8:56:57 AM
JEFFREY D. KYLE
CLERK

**No. 03-15-00334- CR**

**IN THE**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/4/2015 8:56:57 AM
JEFFREY D. KYLE
Clerk

**COURT OF APPEALS**

**OF THE**

**THIRD JUDICIAL DISTRICT OF TEXAS**

--------------------

*EX PARTE* **MOISES MARTINEZ,**

**Appellant**

--------------------

**Habeas Corpus Appeal from Cause No.  2C11-07750**
**Bell County Court-at-Law No. Two**

--------------------

**STATE APPELLEE'S BRIEF**

--------------------

**JAMES NICHOLS**
**BELL COUNTY ATTORNEY**
**by**
**Stephen Morris**
**Assistant County Attorney**
**P.O. Box 1127**
**Belton, Texas 76513**
**Tel: (254) 933-5135**
**Fax: (254) 933-5150**
**SBN: 14501700**

**STATE  WAIVES  ORAL  ARGUMENT**

# IDENTITY OF PARTIES AND COUNSEL

APPELLANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Moses Martinez *AKA*
Moises Martinez Hernandez
456 South Old Potato Rd.
Paige, Texas 78659

APPELLANT'S TRIAL COUNSEL. . . . . . . . . . . . . . . . . . . . . .Scott Sinsabaugh
1508 S.W. H.K. Dodgen Loop
Temple, Texas 76502

APPELLATE AND WRIT COUNSEL. . . . . . . . . . . . . . . . .Jose "Chito" Vela III
505 E. Huntland Drive, Ste 300
Austin, Texas 78752

STATE'S APPELLATE WRIT COUNSEL . . . . . . . . . . . . . . . . . Stephen Morris
Assistant County Attorney
Bell County Attorney's Office
1201 Huey Road
Belton, Texas 76513

JUDGE PRESIDING. . . . . . . . . . . . . . . . . . . . . . . The Honorable John Mischtian
Bell County Court #2
Belton, Texas 76513

# TABLE OF CONTENTS

**WAIVER OF ORAL ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

**IDENTITY OF PARTIES AND COUNSEL**. . . . . . . . . . . . . . . . . . . . . . . . iii

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

**INDEX OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .v

**STATE"S ANSWER TO  GROUND NUMBER ONE.** . . . . . . . . . . . . . . . 1

**PRAYER**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**CERTIFICATE OF SERVICE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**CERTIFICATE OF COMPLIANCE**. . . . . . . . . . . . . . . . . . . . . . . . . . .11

# INDEX OF AUTHORITIES

**Federal Cases**

*North Carolina v. Alford*, 400 U.S. 25, 31,
91 S. Ct. 160, 27 L.Ed 2d 162 (1970) . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . .9

*Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). . . . . . . . . . . . . . . . . . . . . . . . .8

**State Cases**

*Ex Parte Aftab Ali,* 368 S.W. 3d 827, (2012)
(3rd District, Austin). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Ex Parte Richardson*,70 S.W. 3d 865, 870
(Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Ex Parte Wheeler*, 203 S.W. 3d 317, 324
(Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Ex Parte Wolf*, 296 S.W. 3d 160,166-67
(Tex. App.– Houston [14[th] Dist.] 2009, pet.ref'd). . . . . . . . . . . . . . . . . . . . *9*

**Constitution**

U.S.Const. Amend. V, XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Texas Const.  Sec. 3, 3a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATE'S ANSWER TO GROUND ONE FOR RELIEF**

Applicant was not denied his rights to due process of law under the United States Constitution or the Texas Constitution during or after the pendency of his misdemeanor case (MR2C11-07750), as the record from the evidentiary hearing plainly reflects.

On September 3, 2011, applicant was arrested for the Class B misdemeanor offense of Driving While Intoxicated.( State's Writ Exhibit No. 1)  Eleven months later, on August 9, 2012, applicant entered a plea of *nolo contendere* to the above charge in open court with his criminal defense attorney present. ( State's Writ Exhibit No. 2)  During the course of the plea, the trial court orally admonished applicant as to the rights he waived by pleading guilty under the signed plea agreement, as was the trial court's custom. The plea agreement was signed by the prosecutor, applicant's defense attorney and applicant.  The agreement was subsequently approved by the trial court. (State's Writ Exhibit No. 2)  Applicant was sentenced to three days in jail with three days credit, $850.00 fine and $409.10 court costs. (State's Writ Exhibit No. 2)

Before applicant entered his plea of guilty he had the advise and counsel of his criminal defense attorney, Mr. Scott Sinsabaugh, as well as his immigration

1

attorney, Mr. Jesus Andarza. (Writ Hearing, p.19)   Applicant testified that his father had hired Austin attorney, Mr. Andarza, an immigration specialist, even before applicant had been released from the Bell County Jail.  By applicant's own admission, applicant met with his immigration counsel at least three times before applicant entered his plea of guilty on August 9, 2012. (Writ Hearing, p.19)

As is apparent from the record made at the writ hearing, applicant speaks and understands the English language and earned a high school diploma from Reagan High School in Austin, Texas. (Writ Hearing, p. 7)

Applicant had the advice and counsel of his immigration counsel before he ever walked out of the Bell County jail after his arrest. (Writ Hearing Vol. 2, p. 9-10) Applicant's immigration attorney made the trip from Austin to the Bell County Jail within hours of applicant's arrest to advise applicant concerning the immigration implications of applicant's arrest for the misdemeanor offense of Driving While Intoxicated.   Applicant was arrested at 3:00 a.m. on a Saturday morning and his immigration attorney was present at the Bell County jail on Sunday, the following day. (Writ Hearing Vol. 2, p. 14, 18)

According to applicant's testimony, after he was arrested his father retained Mr. Jesus Andarza, an immigration attorney practicing in Austin, Texas.    Not only was his hired immigration attorney counseling with applicant in the Bell County Jail, he also

2

was successfully representing applicant in negotiating with the United States Immigration Service, to allow applicant to be released on a personal bond from federal custody, instead of being held at an immigration facility. (Writ Hearing Vol. 2 ,p. 18)

At the habeas corpus hearing on January 8, 2015, applicant testified that his immigration attorney was Mr. Jesus Andarza who practices in Austin, Texas. (Writ Hearing Vol. 2 ,p. 15)   At this hearing was the first time that the state was informed that applicant had employed an immigration attorney and first time the state had leaned his name.

It is difficult to imagine that Mr. Andarza would take the time to travel on a Sunday from Austin to the Bell County jail, within hours of applicant's arrest and then not inform his client of the scope of the dire immigration trouble he was facing.(Writ Hearing Vol. 2 ,p. 9-10, p.18)   According to applicant's testimony there was never any doubt in either applicant's or his immigration attorney's minds that the sole purpose of the immigrations attorney's trip to the jail was to counsel applicant as to the possibility that applicant could face deportation, as a result of the criminal charge against him.  (Writ Hearing Vol. 2 ,p. 18)

It is surprising that applicant did not have more contact with Mr. Andarza to discuss with and seek his immigration attorney's counsel concerning the impact of the DWI charge on applicant's immigration status.  If anything should have grabbed

applicant's attention as to the gravity of his situation after being arrested for DWI, it would have been that Mr. Jesus Andraza, his immigration lawyer, was sent by applicant's father to the Bell County Jail the following day after applicant was arrested to counsel him as to the potential threat of deportation. (Vol. 2, p. 9)

It is noted that Mr. Jesus Andraza was not present at applicant's habeas corpus hearing on January 8, 2015, because he was not subpoenaed by applicant. Mr. Andraza was not subpoenaed by the state because the state did not know of Mr. Andarza's existence. As a result of the absence of Mr. Andarza, he was not present to defend his representation of applicant. Another result of the absence of Mr. Andarza was that applicant was free to say anything he cared to concerning Mr. Andarza's representation of applicant.

It is plain to see that there was a reason Mr. Andarza was not called as a witness by applicant. The state only discovered this crucial witness' name during the cross-examination of applicant at the hearing of January 8, 2015. Mr. Andarza was not present to give his testimony that would fill in the mile-wide gap of information concerning his representation of applicant.

Applicant has endeavored to throw Mr. Sinsabaugh under the bus instead of applicant's initial immigration attorney. Fortunately, applicant's own testimony belies the accusations of the applicant.

4

Applicant's testimony on January 8, 2015, reveals that applicant visited Mr. Andarza's office, "about once every three months." The date of arrest was September 3,2011and the plea date was August 9, 2012. (State's Exhibit. 1) Once every three months would mean that at a minimum applicant saw his immigration lawyer at least three times over the course of that time.

According to applicant's testimony at his writ hearing, he only met with his criminal defense attorney, Mr. Scott Sinsabaugh, twice. The second time was the day he entered a plea of guilty. (Vol. 2, p. 21-23) Applicant admitted in January 8, 2015, testimony that he never spoke with Mr. Sinsabaugh concerning the fact that he was an illegal alien. However, based upon Mr. Sinsabaugh's own notes taken at the first meeting, Sinsabaugh recollected that Mr. Martinez had referred to some sort of problem with Immigration. Sinsabaugh assumed that was the reason applicant wanted to plead guilty before September.

One would presume that if applicant's writ counsel had spoken with Mr. Andarza and Mr. Andarza had anything to say that would help or be useful in Mr. Martinez' case, writ counsel would have produced Mr. Andarza in court so he could detail his representation of over the eleven month period that he represented applicant.

There is only one reason applicant saw Mr. Andarza and that was to seek Mr. Andarza's counsel in regard to his immigration situation. If applicant received

5

immigration advice it clearly came from Mr. Andarza, his immigration attorney. It strains believability that the immigration lawyer hired by applicant's father, failed to instruct his client not to do anything in regard to his precarious legal situation without conferring with him, his hired immigration lawyer.

It is highly unlikely that applicant's immigration attorney failed to advise his client as to the pitfalls of pleading guilty to the DWI charge. It is also clear based upon applicant's testimony, he never told Mr. Sinsabaugh, his criminal lawyer that he was an illegal alien.( Vol. 2, p. 28) Nor did he ever ask his immigration lawyer to contact Mr. Sinsabaugh concerning his client's criminal case.

The last stop in applicant's DWI case was his plea of *nolo contendere* to the trial court, where the sitting judge warns every defendant, individually, that if that person pleads guilty or nolo contendere and he or she is not a citizen of the United States , that he or she could be deported.

Over and above the trial court's oral warnings to applicant, the type-written admonishments that are included on the printed plea paper specifically set out the following:

> The Defendant acknowledges that if he/she is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, exclusion from admission to this country, or denial of naturalization under federal law.

6

(Excerpt from State's Exhibit No. 2, Judgment And Sentence)

The state avers that when the applicant answered the court's questions and said that he understood the above admonishment as well as when he signed the plea paper with the above warning, he knew precisely what he was doing.(Vol. 2, p. 29)

Applicant's only ground of error is his allegation that he was denied his due process rights under the United States Constitution and his equal rights under the Texas Constitution, when he was subjected to ineffective assistance of counsel in his criminal proceedings, as a result of his non-citizen status. Applicant cited U.S. Const. Amend. V, XIV; Texas Const. Sec. 3, 3a.

Applicant's own direct testimony at the writ hearing reveals unequivocally, that applicant did not disclose to Mr. Sinsabaugh that applicant was an illegal alien. (Vol. 2, p. 10) It is worth noting here that applicant had legal counsel for eleven months. His immigration legal counsel who was hired by applicants father saw applicant at least four times according to applicant. By his own testimony, applicant was visited at the Bell County Jail the day after he was arrested, by Mr. Andarza, the immigration attorney hired by his father and applicant. By applicant's own admission he visited his immigration counsel's office at least three times during the course of the eleven months before he pleaded guilty.

Applicant's hired immigration attorney was not known by name to the

7

prosecution until he was discovered by name, during the cross-examination of applicant at the hearing that is the basis for this brief. The state never knew and was never told that applicant had an attorney who was actively involved in representing applicant's interest with the United States Immigration Service within forty-eight hours of applicant's arrest in Bell County. (Vol. 2, p. 18)

The thrust of Applicant's present position is that he was denied his constitutional rights because he was not advised of the severe immigration consequences that would result from his pleading no contest to the criminal charges against him. *Citing*, *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010).(Vol. 2, p. 18).

Applicant had never at any time, disclosed to the prosecution the name of applicant's attorney that represented applicant in his immigration matters before or after the filing of his application for habeas corpus relief.

Applicant has taken the position that he has had contact with his immigration attorney over the course of almost a year but somehow his immigration attorney has never informed applicant of the immigration consequences of a criminal conviction of an illegal alien.

At first blush, one could conclude that applicant was improperly denied habeas corpus relief because he not advised as to the severe consequences that could occur as a result of a plea of guilty or nolo contendere by his attorneys. However, it

becomes obvious that the one person who can speak concerning his professional representation of applicant is his immigration attorney, Mr. Jesus Andarza. Not surprisingly, Mr. Andarza was not called by appellant to testify on applicant's behalf or to give his testimony in this matter.

To prevail on a post-conviction writ of habeas corpus, the applicant bares the burden of proving, by a preponderance of the evidence the facts that would entitle him to relief. *Ex Parte Richardson*,70 S.W. 3d 865, 870 (Tex. Crim. App. 2002); *Ex Parte Aftab Ali*, 368 S.W.3d 827 (Tex App.– Austin, 2012) Collateral legal consequences resulting from a prior misdemeanor conviction have been defined broadly to include a wide variety of detrimental consequences, including potential deportation. *Ex Parte Wolf*, 296 S.W. 3d 160,166-67 (Tex. App.– Houston [14th Dist.] 2009, pet.ref'd).

The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L.Ed 2d 162 (1970).

In reviewing a trial court's decision to grant or deny habeas corpus relief, the appellate court will look at the facts in the light most favorable to the trial court's ruling and uphold that ruling absent an abuse of discretion. *Ex Parte Wheeler*, 203 S.W. 3d

317, 324 (Tex. Crim. App. 2006); *Ex Parte Aftab Ali*, 368 S.W.3d 827 (Tex App.–Austin, 2012).

A review of the evidence as it exists in the record provides ample evidence that if applicant had gone to trial evidence of his guilt was overwhelming. Introduced without objection of applicant's habeas council at the hearing was State's Exhibit No. 1., *Affidavit Submitted fo Probable Cause Determination*. The affidavit signed by the arresting officer in applicant's case details the evidence of probable cause to arrest and charge applicant.

The state believes that there is more than ample evidence that applicant received competent counsel's advice in regard to his attorney's advice and counsel from the beginning to end.

## PRAYER

The STATE OF TEXAS prays this Honorable Court affirm the findings and judgment rendered by the trial court and deny all relief sought by Appellant.

Respectfully submitted,
/S/ Stephen Morris
Stephen Morris
Assistant Bell County Attorney
P.O. Box 1127
Belton, Texas 76513
Tel: (254) 933-5135
Fax: (254) 933-5150

10

SBN: 14501700
ATTORNEY FOR THE STATE

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Brief for the State was this date forwarded in the manner required by the Texas Rules of Appellate Procedure to Mr. Jose Vela, Writ of Habeas Corpus Counsel for Applicant, 505 East Huntland Drive, Ste 300, Austin, Texas 78752.

**Signed:** November 4, 2015

/S/ Stephen Morris
Stephen Morris
Assistant County Attorney

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 9.4, Rules of Appellate Procedure, I certify that the foregoing brief for the State contains 2,621 words.

/S/ Stephen Morris
Stephen Morris
Assistant County Attorney