**Affirmed and Memorandum Opinion filed October 26, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00052-CR

## EX PARTE JAIME V. MANCILLA

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1046871A**

## MEMORANDUM OPINION

Applicant Jaime V. Mancilla appeals from the trial court's order denying his application for a writ of habeas corpus filed under article 11.072 of the Texas Code of Criminal Procedure. We affirm the trial court's denial of habeas corpus relief.

## I.   INVOLUNTARY PLEA

Applicant argues that his plea was involuntary because his counsel was ineffective. He argues that he was denied effective assistance of counsel based on counsel's failure to investigate the three-year delay in appellant's arrest and failure

to bring a claim that appellant's Sixth Amendment right to a speedy trial was violated.

## A.     General Legal Principles

We review a ruling on an application for writ of habeas corpus for an abuse of discretion. *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011).  A trial court abuses its discretion when it acts without reference to any guiding principles or when it acts arbitrarily or unreasonably. *Ex parte Wolf*, 296 S.W.3d 160, 166 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).  A trial court abuses its discretion if its decision lies outside the zone of reasonable disagreement. *Id.* An applicant seeking post-conviction habeas corpus relief shoulders the burden to establish by a preponderance of the evidence that the facts entitle the applicant to relief. *Id.*

We examine the evidence in the habeas record in the light most favorable to the trial court's ruling. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).  The trial court is the sole fact finder in a post-conviction application for writ of habeas corpus under article 11.072. *Ex Parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016).  We afford almost total deference to the habeas court's determination of historical facts supported by the record, especially when those factual findings rest upon an evaluation of the witnesses' credibility and demeanor. *Ex parte Reed*, 402 S.W.3d 39, 42 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).  We apply the same deference to review the habeas court's application of law to fact questions if resolving those determinations rests upon an evaluation of credibility and demeanor; if the outcome of those ultimate questions turns upon an application of legal standards, we review the habeas court's determination de novo. *Id.*  We will uphold the trial court's ruling as long as it is correct on any theory of

2

law applicable to the case. *Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001) (per curiam).

A criminal defendant has the right to effective assistance of counsel in guilty-plea proceedings. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). "In order to prevail on a Sixth Amendment claim of ineffective assistance of counsel, a habeas applicant must show, by a preponderance of the evidence, that 'counsel's performance was deficient.'" *Ex parte Bowman*, 533 S.W.3d 337, 349 (Tex. Crim. App. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). "The applicant must show that counsel's performance failed to satisfy an objective standard of reasonableness under prevailing professional norms." *Id*. at 349–50. We must assess reasonableness under the circumstances of the case viewed at the time of counsel's conduct. *Id*. "There are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. There is a presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*; *see Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) ("The review of counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance.").

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Id* at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003).

In addition to showing that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, the habeas applicant must also show that there is a reasonable probability that but for

3

counsel's errors, the result of the proceeding would have been different. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). In the context of a motion to dismiss for violating the applicant's Sixth Amendment right to a speedy trial, applicant must show that the motion would have been granted. *See id.* ("[A]ppellant was still obliged to prove that a motion to suppress would have been granted in order to satisfy *Strickland.*"); *Roberson v. State*, 853 S.W.2d 508, 510–12 (Tex. Crim. App. 1993) (without a showing that a pre-trial motion had merit and that a ruling on the motion would have changed the outcome of the case, counsel will not be ineffective for failing to assert the motion).

"The Sixth Amendment to the United States Constitution, made applicable through the Fourteenth Amendment, guarantees a speedy trial to an accused." *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). A court should consider the four *Barker* factors in addressing a speedy-trial claim: (1) the length of delay, (2) the State's reason for delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of the delay. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016). To trigger a full *Barker* analysis, a defendant must first make a threshold showing that the interval between accusation and trial is "presumptively prejudicial." *Balderas*, 517 S.W.3d at 767. Generally, courts deem delays approaching one year as unreasonable enough to trigger further inquiry. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

## B. Background

Appellant sexually assaulted his sister-in-law on October 30, 2005. In early November 2005, investigators spoke with the complainant, applicant's wife, and applicant. Applicant's wife provided applicant's phone number to investigators. After meeting with investigators, in mid-November 2005, appellant was indicted.

4

The police report indicated that officers responded to a disturbance at an apartment, the address where the sexual assault occurred as listed in the report. In his statement to the investigator, applicant indicated that he, his wife, and the complainant had returned to his apartment after going out drinking and that a consensual sexual encounter occurred there between applicant and the complainant.

In January and February 2006, four months after the assault, authorities attempted to serve the arrest warrant on applicant at the address listed in the police report. Authorities again attempted this address in April 2006 but were informed by neighbors that applicant had moved. The records show that the authorities attempted to locate applicant by checking the Texas Workforce Commission Database in December 2006, January 2008, and May 2008. Applicant was not arrested until March 2009. In June 2009, applicant pleaded guilty and was sentenced to ten years' deferred adjudication.

Applicant's former trial counsel testified that he occasionally files speedy-trial motions when he believes his client has a viable claim but did not "really recall having focused very much on that point" in applicant's case. He testified that, had he considered it viable in applicant's case, he would have filed a speedy-trial motion. Applicant's trial counsel did not make any attempt to investigate efforts made by law enforcement to execute on the arrest warrant.

A sergeant with the Harris County Sheriff's Office testified regarding the records for the Harris County Sheriff's Office and attempts to serve applicant's arrest warrant. The officer testified that the sheriff's office entered the warrant into a state database and a national database. In April 2006, applicant's warrant was "pulled for Operation Falcon," a "task force between the sheriff's office, U.S. Marshalls as well as other agencies." The task force was to "go after certain types

5

of warrants" with the U.S. Marshalls but that the sheriff's office did not have access to the records of the results of the task force operations. The officer testified that there are approximately sixty-five agencies in Harris County that "have jurisdiction" to serve warrants and that the sheriff's office is only required to document its own attempts at serving the warrant. The officer testified that he would not know about any other attempts made to serve applicant's warrant that may have occurred through another agency, but that no one in the sheriff's office had gone to a physical address to locate applicant between April 2006 and March 2009.

Applicant testified that his lawyer never advised him of his "right to a speedy trial." Applicant testified that he and his wife were in constant contact during this period, they separated for a time, resumed their relationship, and had a child. Applicant also had frequent contact with the complainant. Applicant testified that he knew there was an investigation, but that he was not aware of any news coverage of the incident, he was able to maintain employment, and it did not impede his life in any way.

The trial court concluded that, because of the three-year delay, applicant was entitled to an examination of his speedy-trial claim. However, upon review of the *Barker* factors, the trial court concluded that applicant's speedy-trial motion would have been unsuccessful. The trial court concluded that "there is no evidence that the delay was deliberate or the result of negligence. There is no evidence that the [applicant's] reputation, employment, and/or marriage suffered from the delay. The [applicant] was not subject to incarceration, anxiety, and there is no evidence his defense was impaired."

The trial court concluded that trial counsel's conduct was within the range of competence of criminal defense attorneys and that if a speedy-trial motion had

6

been filed, it likely would have failed. The trial court also considered "unpersuasive" applicant's testimony that he would not have pleaded guilty and insisted on going to trial, because the State possessed DNA evidence of the sexual encounter and the complainant did not recant her statement regarding the sexual assault.

## C. Speedy Trial

Assuming without deciding that applicant showed by a preponderance of the evidence that his trial counsel failed to conduct an adequate preliminary investigation to inform his decision to not file a speedy-trial motion, applicant must also show that a speedy-trial motion would have been successful. *See Jackson*, 973 S.W.2d at 957. To determine whether a speedy-trial motion would have been successful, we review and balance the *Barker* factors. *See* 407 U.S. at 530.

### 1. Length of Delay

The delay of forty-three months from indictment to applicant's guilty plea is sufficient to trigger a speedy-trial analysis. *See Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) (noting delay of eight months or longer is presumptively unreasonable and triggers speedy-trial analysis).

### 2. Reason for Delay

The evidence showed that the sheriff's office attempted to serve applicant three times at his residence, the location of the sexual assault, shortly after he was indicted. In the last service attempt made by the sheriff's office, the neighbors confirmed that applicant had moved. While the officer testified that there are sixty-five other agencies that may serve warrants, aside from "Operation Falcon," there was no evidence of attempts, if any, made by other agencies. The evidence showed that from May 2006 through March 2009, the sheriff's office continued to

check various databases for applicant's location or address but did not make any attempts to physically serve the warrant until March 2009. A reasonable inference is that the sheriff's office did not have a good address for applicant and was unable to locate applicant through their usual database inquiries.

Applicant argues that no effort was made to contact the complainant, applicant, or applicant's wife to ascertain an address for service of the warrant. However, this assertion is not supported by the record. Neither applicant's wife nor the complainant testified at the hearing. It is unclear from the record whether applicant, the complainant, or the complainant's wife were contacted to locate and serve the warrant on applicant. The officer testified that the sheriff's office did not have access to the contact information in the Houston Police Department's police report. The officer also testified that he was unaware that the complainant was the applicant's sister-in-law. The trial court found the officer's testimony credible.

Based on the evidence, reasonable inferences therefrom, and the deference given to the trial court in factual determinations, the trial court did not abuse its discretion in concluding that the State was neither deliberately delaying applicant's trial nor negligent in failing to locate and serve him. *See Kelly v. State*, 163 S.W.3d 722, 726–27 (Tex. Crim. App. 2005) (deferring to trial court's resolution of factual issues, right to draw reasonable inferences therefrom, and ability to completely disregard uncontroverted witness testimony based on evaluations of credibility and demeanor in speedy trial context); *see also Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) ("[A]ll evidence must be viewed in the light most favorable to [the trial court's] ruling.").

### 3. Timely Assertion of Right

A defendant's timely assertion of his right to a speedy trial may depend upon whether the defendant knew about the outstanding charges. *See Doggett v. United*

8

*States*, 505 U.S. 647, 653 (1992). When a defendant is not aware that charges have been filed, courts hold it would be illogical to impose a penalty for not asserting speedy-trial rights during that period. *See Phillips v. State*, 650 S.W.3d 396, 400 (Tex. Crim. App. 1983) (not faulting defendant for not asserting his right to speedy trial where he was unaware that he had been indicted and, therefore, had no opportunity to assert his right); *Gonzales*, 435 S.W.3d at 812 (undisputed evidence established defendant had no knowledge that charges were filed against him, thus failure to not assert his right for that six year period was not held against him). It was undisputed that applicant did not know of the pending charges.[1] Thus, applicant's failure to assert his right during the time period between his indictment and arrest cannot be held against him. *See Phillips*, 650 S.W.3d at 400; *Gonzales*, 435 S.W.3d at 812. However, applicant claims that his trial counsel was ineffective for failing to file a motion to dismiss based on the denial of his right to a speedy trial. If trial counsel had immediately filed a motion to dismiss, the trial court may have weighed his request for dismissal, rather than request for speedy trial, against applicant when weighing the *Barker* factors. *See Cantu*, 253 S.W.3d at 284; *Phillips*, 650 S.W.2d at 401 (Tex. Crim. App. 1983) ("[Appellant's] prime object was not to gain a speedy trial, but was an attempt to have the charge against him dismissed. Although a motion to dismiss notifies the State and the court of the speedy-trial claim, a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim." (quotation and citation omitted)). Thus, while we do not fault applicant for not raising the speedy-trial issue in the forty months between his indictment and arrest, if his counsel had filed a motion to dismiss as applicant insists he should have, the trial court could weigh this factor against applicant, but not heavily.

---

[1] The trial court did not make an express credibility determination on this portion of applicant's testimony.

### 4.    Prejudice

"When a court analyzes the prejudice to the defendant, it must do so in light of the defendant's interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired." *Cantu*, 253 S.W.2d at 285. Of these, the last is the most serious because the defendant's inability to prepare his case skews the fairness of the entire system. *Id*. "[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655.

Here, applicant failed to demonstrate or articulate any sort of prejudice. *See Dragoo*, 96 S.W.3d at 315–16 (prejudice factor weighed against violation of defendant's speedy-trial right even though three-and-a-half-year delay was "patently excessive" and "presumptively prejudicial" because defendant acquiesced in the delay and failed to demonstrate prejudice); *Phipps v. State*, 630 S.W.2d 942, 946 (Tex. Crim. App. 1982) (where defendant demonstrated no prejudice by four-year delay between arrest and trial and defendant waited until one month before trial to assert his right to a speedy trial, defendant's Sixth Amendment right to a speedy trial not violated). Applicant was aware that there was an investigation but testified that it did not impede his life in any way. Applicant did not put on any evidence that at the time of his guilty plea his defense had been impaired, that he had been subjected to a lengthy pre-trial incarceration, that any witnesses had died or become unavailable, or that he suffered any kind of anxiety or concern over the charges.

Applicant argues that the State's delay of over forty-two months raises a presumption of prejudice and that the State has the burden of affirmatively proving

the delay left the applicant's ability to defend himself unimpaired. *See Dragoo*, 96 S.W.3d at 315 (agreeing that three-and-a-half year delay between arrest and trial was "patently excessive" and "presumptive[ly] prejudice[ial]" to the defendant's ability to defend himself); *Zamorano v. State*, 84 S.W.3d 643 (Tex. Crim. App. 2002) (delay of four years supported "inference of actual prejudice" under fourth *Barker* factor, but considering the defendant's evidence of prejudice as well).

In *Shaw* the delay between the defendant's indictment and trial was a period of thirty-eight months. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). The court stated that it "must presume that the lengthy delay here did adversely affect [the defendant's] ability to defend himself" and the "presumption is extenuated by [the defendant's] longtime acquiescence in the delay." *Id*. at 890. The court concluded that because the trial court could have reasonably concluded that the defendant did not "demonstrate any actual prejudice" that the fourth *Barker* factor weighed against finding a violation of the defendant's right to a speedy trial. *Id*. at 890–91.

In applicant's case, the lengthy delay of forty-three months would have raised a presumption that applicant's ability to defend himself was adversely affected. *See Dragoo*, 96 S.W.3d at 315 (thirty-six month delay); *Shaw*, 117 S.W.3d at 889 (thirty-eight months). However, there is no evidence in the record as to whether trial counsel was aware that this presumption would apply in applicant's case or whether trial counsel knew that the State could rebut the presumption based on the facts of the case at the time of the guilty plea. *Cf. Roberson*, 852 S.W.2d at 510 ("It is possible that counsel consulted with his client and determined that production of the photos would in fact discredit appellant's sole defense of mistaken identity. . . . Although a hearing was held on appellant's motion for new trial based on allegations of ineffective assistance, no questions

11

were asked of counsel in this respect."); *Jackson*, 973 S.W.2d at 956 (defendant claiming ineffective assistance of counsel by attorney's failure to file motion to suppress had to prove motion would have been granted).

Because there is no evidence that trial counsel was aware that the delay would be considered presumptively prejudicial or whether trial counsel knew whether the State would be able to rebut the presumption, there was no evidence of any prejudice, anxiety or lengthy pre-trial incarceration, and trial counsel testified that it was his practice to file a speedy-trial motion when he believed it to be meritorious, we presume that trial counsel's representation fell within the wide range of reasonable and professional assistance. *See Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Accordingly, we conclude that this factor weighs in favor of the State, but not heavily.

### 5. Balancing the *Barker* Factors

Balancing the four factors, we agree with the trial court that applicant's speedy-trial motion would likely have failed. Applicant has failed to prove by a preponderance of the evidence that a speedy-trial motion would have been meritorious.

### D. Ineffective Assistance of Counsel

Appellant has not shown that a speedy-trial motion would have been granted. *See Jackson*, 973 S.W.2d at 956; *Roberson*, 853 S.W.2d at 510–12. As a result, he has not shown that his trial counsel was ineffective.

## II. CONCLUSION

Because the record fails to affirmatively demonstrate the alleged ineffective assistance of counsel and because applicant has failed to carry his burden of proof

to establish ineffective assistance of counsel, we affirm the trial court's denial of habeas corpus relief.


/s/  Ken Wise
    Justice


Panel consists of Justices Wise and Bourliot and Senior Justice Jamison.[*]

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[*] Senior Justice Martha Hill Jamison sitting by assignment.